1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10    RONALD GLOVER,

11          Plaintiff,              No. 2:10-cv-0430 KJM KJN P

12    vs.

13    MATTHEW CATE, et al.,

14          Defendants.            FINDINGS AND RECOMMENDATIONS

15    _____/

16    I.  Introduction

17              Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis,

18    with an action filed pursuant to 42 U.S.C. § 1983.  On January 5, 2011, defendants filed a motion

19    to dismiss on the grounds that the amended complaint ("AC") fails to state a cognizable civil

20    rights claim.  After receiving an extension of time, plaintiff filed an opposition on February 3,

21    2011.   Defendants filed a reply on March 14, 2011, after receiving an extension of time.  For the

22    reasons set forth below, the undersigned recommends that defendants' motion be granted and this

23    case be dismissed.

24    II.  Motion to Dismiss

25              Background

26              Plaintiff is proceeding on the AC filed May 25, 2010, against Matthew Cate,

1

1   Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), Warden

2   Mike Evans, and Warden Barnes (collectively "defendants").  (Dkt. No. 11.)  Plaintiff alleges

3   defendants put into place customs and policies to force inmate cell integration, without strict

4   scrutiny review, which plaintiff alleges violates plaintiff's religious freedom to only be housed

5   with an inmate of the same race.  Plaintiff also claims his right to equal protection was violated,

6   and that being classified as "Race Eligible" endangers plaintiff's safety in violation of the Eighth

7   Amendment.  Finally, plaintiff contends that his constitutional rights were violated because

8   prison officials failed to apply strict scrutiny in determining plaintiff's classification, and argues

9   Johnson v. California, 543 U.S. 499 (2005), cannot be applied to plaintiff because plaintiff was

10  not a party to the Johnson case.

11          Defendants contend plaintiff has failed to state a cognizable civil rights claim.

12  Defendants argue that plaintiff has no protected liberty interest in a particular classification, but

13  that if plaintiff was entitled to due process, plaintiff received all process that was due under

14  Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986), abrogated in part on other grounds

15  by, Sandin v. Connor, 515 U.S. 472 (1995).  Defendants argue that plaintiff was not denied equal

16  protection by the prison's implementation of a race neutral policy.  Defendants contend

17  plaintiff's religious claims must give way to the prison's race neutral policy based on the Equal

18  Protection Clause.  Defendants argue that plaintiff's Eighth Amendment claim that racial

19  segregation is necessary to prevent racial violence has been rejected by the United States

20  Supreme Court on several occasions.  (Dkt. No. 28 at 8.)  Finally, defendants argue that

21  plaintiff's contention that the integration policy is unconstitutional because plaintiff was not a

22  part of the settlement of an individual lawsuit in Johnson is without merit.

23          Legal Standards

24          Rule 12(b)(6) of the Federal Rules of Federal Procedures provides for motions to

25  dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

26  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

1   court must accept as true the allegations of the complaint in question, Erickson v. Pardus,

2   551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins

3   v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th

4   Cir. 1999).  In order to survive dismissal for failure to state a claim, a complaint must contain

5   more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

6   allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v.

7   Twombly, 550 U.S. 544, 554 (2007).  However, "[s]pecific facts are not necessary; the statement

8   [of facts] need only give the defendant fair notice of what the . . . claim is and the grounds upon

9   which it rests."  Erickson, 551 U.S. 89 (internal citations omitted).

10          A motion to dismiss for failure to state a claim should not be granted unless it

11  appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which

12  would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In general, pro

13  se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

14  404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.

15  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's

16  liberal interpretation of a pro se complaint may not supply essential elements of the claim that

17  were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

18          1.  Application of Johnson v. California

19          Plaintiff herein misunderstands the application of Johnson.  Whether or not

20  plaintiff was a party to Johnson is of no consequence here.  This court is bound by United States

21  Supreme Court authority, and therefore must apply Johnson in this action.  Contrary to plaintiff's

22  argument (dkt. no. 25 at 9), this court has no authority to terminate the subsequent settlement of

23  Johnson.  Id.

24          In Johnson, the Supreme Court reviewed a policy that separated inmates on the

25  basis of race.  Id., 543 U.S. at 507-08.  In so doing, the Court articulated that it had consistently

26  held "that all racial classifications [imposed by government] . . . must be analyzed by a reviewing

court under strict scrutiny." Id. at 505 (citation and internal quotation marks omitted).  Racial

classifications are viewed as immediately suspect, see id. at 509, and their usage can seriously

damage the integrity of a prison system.  See id. at 510-11.

 As noted by defendants, defendant Cate's authority to implement race-neutral cell

assignments is derived from California Penal Code § 5054, which vests defendant Cate with the

power to supervise and manage state prisons.  Because this integrated housing policy does not

use race as the main determining factor for housing, it is consistent with the requirements of

Johnson.

 In addition, plaintiff misunderstands the application of strict scrutiny.  Johnson

involved the proper level of constitutional scrutiny, not a standard of review, that should be

applied to a particular claim in a court of law.  Id.  Johnson does not require prison officials to

use a strict scrutiny standard of review in prison classification hearings, and plaintiff has

provided no other legal authority for this contention.  Rather, courts apply strict scrutiny to

determine if a race-based policy violates the Equal Protection Clause of the Fourteenth

Amendment.  Johnson, 543 U.S. at 505.  Strict scrutiny is not applied to determine what process

is due under the Fourteenth Amendment when an inmate contends prison officials deprived the

inmate of an identified liberty interest.  See Sandin, 515 U.S. at 483-84 (liberty interest defined

as "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life."); Toussaint, 801 F.2d at 1100.

 Accordingly, plaintiff's arguments that he is not subject to Johnson, or that

plaintiff was entitled to the application of strict scrutiny at his classification hearing, are

unavailing.

 2.  Due Process

 Plaintiff contends that his due process rights were violated when he was not

provided the procedural protections required by Wolff v. McDonnell, 418 U.S. 539 (1974).

Plaintiff argues he should have been allowed to have an attorney and to call witnesses on his

4

behalf.  Defendants argue that plaintiff's claim fails under <u>Sandin</u>, 515 U.S. at 484, and that, in

the alternative, plaintiff was provided all the process plaintiff was due.

The Fourteenth Amendment provides that no state shall deprive a person of life,

liberty, or property without due process of law.  These procedural guarantees apply only when a

constitutionally-protected liberty or property interest is at stake.  <u>Board of Regents v. Roth</u>, 408

U.S. 564, 569-70 (1972) (the Fourteenth Amendment's Due Process Clause does not trigger the

need for procedural protections in every instance involving the state's deprivation of an

individual's liberty, but only when there is a cognizable liberty interest at stake), <u>overruled</u> <u>in</u> <u>part</u>

<u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Paul v. Davis</u>, 424 U.S. 693 (1976).  Protected liberty interests arise from the

Fourteenth Amendment's Due Process Clause itself, or from state laws or regulations deemed to

have created a liberty interest cognizable as a civil right.  <u>Meachum v. Fano</u>, 427 U.S. 215,

224-27 (1976).

To survive Rule 12(b)(6) review, the complaint must allege facts permitting a

finding that the plaintiff has a liberty interest at stake, arising from either the Due Process clause

or from state-created sources.  <u>Sandin</u>, 515 U.S. at 477-78 (examining whether state prison

regulations or the Due Process Clause afforded inmate a protected liberty interest that would

entitle him to procedural protections before transfer into segregation); <u>see</u> <u>Roth</u>, 408 U.S. at 569

("The requirements of procedural due process apply only to the deprivation of interests

encompassed by the Fourteenth Amendment's protection of liberty and property").

> These interests will be generally limited to freedom from restraint
> which, while not exceeding the sentence in such an unexpected
> manner as to give rise to the protection by the Due Process Clause
> of its own force . . . , nonetheless imposes atypical and significant
> hardship on the inmate in relation to the ordinary incidents of
> prison life.

<u>Sandin</u>, 515 U.S. at 482.

Changes in a prisoner's conditions of confinement can amount to a deprivation of

a liberty interest constitutionally protected under the Due Process Clause, but only if the liberty

1  interest in question is one of real substance.  <u>Sandin</u>, 515 U.S. at 477-78.  Only in those cases

2  where a sufficiently substantial liberty interest is at stake must the court evaluate whether the

3  process received comported with minimum procedural due process requirements.  <u>Jackson v.</u>

4  <u>Carey</u>, 353 F.3d 750, 755 (9th Cir. 2003) (internal quotations omitted).  If the court answers the

5  first question in the negative, the plaintiff has failed to state a section 1983 claim for a Fourteenth

6  Amendment violation.

7            In order to find a liberty interest conferred by state law, the analysis focuses on the

8  nature of the deprivation rather than on the language of any particular regulation, to avoid

9  involvement of federal courts in day-to-day prison management.  <u>See</u> <u>Sandin</u>, 515 U.S. at 479-82,

10  483.

11            In his AC, plaintiff has failed to allege facts supporting a claim that he had a

12  protected liberty interest in not being classified as "Race Eligible."  The Supreme Court noted in

13  dicta that prisoner classification and eligibility for rehabilitative programs in the federal system

14  are delegated to the "full discretion" of federal prison officials, and inmates do not have

15  "legitimate statutory or constitutional entitlement sufficient to invoke due process."  <u>Moody v.</u>

16  <u>Daggett</u>, 429 U.S. 78, 88 n.9 (1976).  The assignment of a housing classification does not create a

17  liberty interest triggering due process.  <u>See</u> <u>Myron v. Terhune</u>, 476 F.3d 716, 718 (9th Cir. 2007)

18  (classification at a Level IV prison rather than at a Level III prison did not subject Myron to an

19  atypical and significant hardship).  Moreover, plaintiff has not shown that classifying plaintiff as

20  "Race Eligible" will affect the duration of plaintiff's incarceration.  <u>See</u> <u>Keenan v. Hall</u>, 83 F.3d

21  1083, 1088-89 (9th Cir. 1996) (prison classification created no "atypical and significant

22  hardship" because it would not invariably affect the duration of the inmate's sentence)

23  (interpreting <u>Sandin</u>).  Absent the existence of a protected liberty interest, plaintiff's due process

24  claim fails.  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005).

25            Further, even if plaintiff could demonstrate a protected liberty interest existed,

26  plaintiff fails to set forth any facts showing that he was denied the minimal procedural

6

protections he was due under federal law.  Toussaint, 801 F.2d at 1100.  Contrary to plaintiff's

position, Wolff does not apply to plaintiff's challenge to his classification.  Wolff governs the

procedures required for disciplinary confinement.  Id., 418 U.S. at 539.

In addition, plaintiff received the process that was due:

> We conclude that when prison officials initially determine
> whether a prisoner is to be segregated for administrative reasons
> due process only requires the following procedures:  Prison
> officials must hold an informal nonadversary hearing within a
> reasonable time after the prisoner is segregated. . . . The prison
> officials must inform the prisoner of the charges against the
> prisoner or their reasons for considering segregation.  Prison
> officials must allow the prisoner to present his views.

Toussaint, 801 F.2d at 1100.  In the instant action, plaintiff was interviewed twice, first in

connection with the first level of review of plaintiff's administrative appeal, then again in

connection with plaintiff's second level of review.  (Dkt. No. 25 at 25-26, 36-37.)  On August 12,

2009, plaintiff had a program review hearing.  (Dkt. No. 28 at 12.)  The classification committee

reviewed plaintiff's prison file.  (Id.)  Plaintiff was provided an opportunity to present his views

at the hearings, and plaintiff was provided a written decision.  (Id.)

In matters of classification, courts have accorded great deference to the decisions

of prison officials.  A lesser quantum of process is due a state prisoner in a classification hearing

than is required to punish a prisoner for a disciplinary infraction.  The minimum due process

required is that an inmate receive notice, an informal nonadversary hearing, and an opportunity to

present his views to the prison official.  So long as these requirements occur, the due process

clause is satisfied.  Here, plaintiff was provided more due process than required under Toussaint.

In addition to the minimum process required, plaintiff had three opportunities to present his

views, and he was provided a written decision.  Therefore, the AC should be dismissed for

failure to state a due process claim.

Moreover, because plaintiff's due process rights were not violated, plaintiff's

classification as "Race Eligible" did not violate plaintiff's constitutional rights, and defendants

1   Cate, Evans and Barnes cannot be held liable for failure to properly train or supervise their

2   subordinates.

3            3.  Equal Protection

4          In the AC, plaintiff alleges that the provisions of the Department of Corrections

5   and Rehabilitation Operations Manual § 54055.5.1 Integrated Housing Codes violate the Equal

6   Protection Clause and sets policy by racial discrimination by its own terms.  Plaintiff contends

7   these provisions violate Johnson because they use race as classifications.  Defendants contend

8   that the use of these classifications are to ensure the racial integration policies are implemented

9   safely, in conformance with Johnson, 543 U.S. at 512 (The "necessities of prison security and

10  discipline . . . are a compelling government interest justifying only those uses of race that are

11  narrowly tailored to address those necessities.")

12         The Equal Protection Clause requires that persons who are similarly situated be

13  treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An

14  equal protection claim may be established by showing that the defendant intentionally

15  discriminated against the plaintiff based on the plaintiff's membership in a protected class,

16  Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), or that similarly situated individuals

17  were intentionally treated differently without a rational relationship to a legitimate state purpose,

18  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546

19  F.3d 580, 592 (9th Cir. 2008).  A plaintiff must allege sufficient facts either showing intentional

20  unlawful discrimination or "that are at least susceptible of an inference of discriminatory intent."

21  Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998).

22         In the prison context, a prisoner must demonstrate that his treatment is invidiously

23  dissimilar to that received by other inmates.  A prison classification based on race is at once

24  suspect and is subject to strict scrutiny.  Therefore, prison officials must demonstrate that any

25  policy based on race is narrowly tailored to meet a compelling government interest.  See Johnson

26  543 U.S. at 499.

1    Plaintiff cannot claim an actual injury when his claim is not that he is being

2    segregated or housed only with members of his own race but that plaintiff has been classified as

3    "Race Eligible," which means plaintiff is eligible for integrated housing.  Johnson, 543 U.S. at

4    499.  Plaintiff cannot articulate a claim of racial discrimination based on being subjected to a

5    prison housing regulation which does not use race as the main determining factor for housing.  A

6    claim of racial discrimination must be based on an allegation of compelled segregated housing,

7    rather than compelled integrated housing.  "An express racial classification . . . [is] immediately

8    suspect."  Johnson, 543 U.S. at 509 (internal citation omitted).  Here, the policy at issue

9    specifically states that "[a]n inmate's race will not be used as a primary determining factor in

10   housing an institution's inmate population."  Department of Corrections and Rehabilitation

11   Operations Manual § 54055.4.  The provisions of § 54055.4 further state that "[h]ousing

12   assignments will be determined in a manner that will ensure that the safety, security, treatment,

13   and rehabilitative needs of the inmate are considered, as well as the safety and security of the

14   public, staff, and institutions."  Id.  Thus, by its very terms the policy at issue provides that race is

15   not the primary determining factor in housing, but that certain individual case factors, such as

16   history of racial violence, disciplinary history, etc., will be used to ensure safety.  The terms used

17   in § 54055.5.1 reflect the various classifications are used to ensure the safety and security of the

18   inmates and the institution.

19   The Fourteenth Amendment bans racial discrimination of the sort plaintiff seeks

20   to impose in the form of segregation by race.  Id., at 510-511.  Thus, plaintiff's equal protection

21   claim fails.  See Bjorlin v. Hubbard, 2010 WL 457685 at *1 (E.D. Cal. 2010) ("[N]either a[]

22   [sensitive needs yard] or a [general population] inmate is entitled to be housed with a member of

23   his own race, nor can he claim an actual injury when his claim is not that he is being segregated

24   or housed only with members of his own race but is rather the reverse that he is being told he

25   must agree to integrated housing.") (recommending that Bjorlin's claims of discrimination and

26   violation of his rights under the Equal Protection Clause of the Fourteenth Amendment by any

9

1  prison policy of integrated housing be dismissed; adopted in full by district court order dated
2  May 7, 2010).

3           4.  <u>Plaintiff's Religious Claim</u>

4           Plaintiff contends that he is a "Christian/Odinist/Aryan" who believes it is a sin
5  for him to share a cell with someone who is not of the Aryan race.  Plaintiff argues his belief in
6  racial separation is religious and sincerely held.

7           Defendants contend that where there is a conflict between plaintiff's religious
8  beliefs and defendants' obligation to maintain policies and practices that are not based on race,
9  the First Amendment must give way to the Equal Protection Clause of the Fourteenth
10  Amendment.

11           a.  <u>RLUIPA</u>

12           Under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), a
13  government may not impose a substantial burden on the religious activities of a confined person
14  unless the government establishes that the burden furthers a "compelling governmental interest"
15  and does so by "the least restrictive means."  42 U.S.C. § 2000cc-1(a)(1)-(2).  The burden need
16  not concern a religious practice that is compelled by, or central to, a system of religious belief.
17  <u>Id.</u> § 2000cc-5(7)(A).  The "compelling government interest" and "least restrictive means" test
18  replaced the "legitimate penological interest" test of <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987).
19  <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 994 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)).
20  Under its own terms, RLUIPA must be "construed broadly in favor of protecting an inmate's
21  right to exercise his religious beliefs."  <u>Id.</u> at 995 (citing 42 U.S.C. § 2000cc-3(g)).

22           Plaintiff bears the burden of establishing that RLUIPA has been violated and that
23  his religious exercise has been substantially burdened.  <u>Warsoldier</u>, 418 F.3d at 994 (citing 42
24  U.S.C. § 2000cc-2(b)).  The government then bears the burden of proving that the substantial
25  burden on the inmate's religious practice both furthers a compelling governmental interest and is
26  the least restrictive means of doing so.  <u>Id.</u> at 995 (citing 42 U. S .C. §§ 2000cc-1(a),

1    2000cc-2(b)).

2            b.  First Amendment

3            The First Amendment guarantees the right to the free exercise of religion.  Cruz v.

4    Beto, 405 U.S. 319, 323 (1972).  "The free exercise right, however, is necessarily limited by the

5    fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to

6    maintain prison security."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987), superseded on

7    other grounds by statute, RLUIPA, 42 U.S.C. §§ 2000cc, et seq.  Consequently, in order to

8    establish a free exercise violation, a prisoner must show a defendant burdened the practice of his

9    religion without any justification reasonably related to legitimate penological interests.  See

10   Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008) (factual issues precluded summary

11   judgment on plaintiff's claim that prison's refusal to provide kosher meat diet violated Shakur's

12   constitutional rights).

13           c.  Ripeness Doctrine

14           "The ripeness doctrine prevents courts, through avoidance of premature

15   adjudication, from entanglement in theoretical or abstract disagreements that do not yet have a

16   concrete impact on the parties."  18 Unnamed "John Smith" Prisoners v. Meese, 871 F.2d 881,

17   883 (9th Cir. 1989).  The ripeness inquiry contains both a constitutional and a prudential

18   component.  Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000)

19   (en banc).  The constitutional component of ripeness is often treated under the rubric of standing,

20   and often "coincides squarely with standing's injury in fact prong."  Id.  To satisfy the

21   constitutional component there must exist a constitutional case or controversy; the issues must be

22   "definite and concrete, not hypothetical or abstract."  Id. at 1139 (internal quotation and citation

23   omitted).  An alleged injury which is too imaginary or speculative will not support jurisdiction.

24   Id.  In particular, an issue is not ripe for adjudication if it depends on "contingent future events

25   that may not occur as anticipated, or indeed not occur at all."  18 Unnamed John Smith Prisoners,

26   871 F.2d at 883 (internal quotation and citation omitted).

                                            11

d. <u>Application</u>

Plaintiff contends that his classification as "Race Eligible" is a substantial burden on the exercise of his religion. However, plaintiff does not allege that he has been required to share a cell with an inmate of another race, or that he is not allowed to choose his own cell partner. The Classification Committee Action reflects plaintiff has been double-celled since reception in the California Department of Corrections and Rehabilitation. (Dkt. No. 28 at 12.) It appears plaintiff is presently celled with another inmate of the same race as plaintiff, such that plaintiff is presently free to exercise his religion at this time. Because plaintiff has only been deemed "eligible" to be housed with someone of a different race, plaintiff has not demonstrated an injury in fact. Therefore, plaintiff's religious claims are not ripe for review, and should be dismissed without prejudice to plaintiff's raising such claims in a separate lawsuit[1] should he suffer an actual injury.

5. <u>Eighth Amendment</u>

Plaintiff alleges that the prison's integration policy will cause plaintiff physical harm in violation of the Eighth Amendment. Defendants contend this claim is vague, conclusory, and speculative, and should be dismissed.

As noted by defendants, plaintiff's claim that racial segregation is required to prevent racial violence has been repeatedly rejected by the United States Supreme Court. <u>Buchanan v. Warley</u>, 245 U.S. 60, 81 (1917) (argument that proposed segregation promoted the public peace cannot be "accomplished by laws or ordinances which deny right created or

---

[1] Plaintiff is cautioned, however, that it appears likely that defendants can show a compelling government interest in eliminating racial segregation and that the prison's integrated housing policy is the least restrictive means to accomplish this goal. The integrated housing policy is aligned with several Supreme Court authorities finding policies that promote racial segregation violate the Constitution. <u>See</u> <u>Bob Jones University v. United States</u>, 461 U.S. 574, 592 (1983) (tax exempt status denied to a religious school because "racial discrimination in education violates deeply and widely accepted views of elementary justice.") In <u>Brown v. Board of Education</u>, 347 U.S. 483 (1954), the Supreme Court soundly rejected the concept of "separate but equal." <u>Id.</u> at 495. In <u>Johnson</u>, the Supreme Court found the policy of racial classification in prison violated the Constitution as well. <u>Id.</u>, 543 U.S. at 507-08.

protected by the federal constitution"); <u>Watson v. City of Memphis</u>, 373 U.S. 526, 536 (1963)

("There is no indication that there had been any violence or meaningful disturbances when other

recreational facilities [were] desegregated.  In fact, the only evidence in the record was that such

prior transitions [were] peaceful."; <u>Palmore v. Sidoti</u>, 466 U.S. 429, 434 (1984) ("Whatever

problems racially mixed households may pose for children in 1984 can no more support a denial

of constitutional rights than could the stresses that residential integration was thought to entail in

1917.  The effects of racial prejudice, however real, cannot justify a racial classification

removing an infant child from the custody of its natural mother found to be an appropriate person

to have such custody.").  Moreover, the Supreme Court has specifically rejected plaintiff's claim

in the prison context.  <u>Johnson</u>, 543 U.S. at 507-08 (By perpetuating the notion that race matters

most, racial segregation of inmates "may exacerbate the very patterns of [violence that it is] said

to counteract.")

Plaintiff alleges that he is at risk of future harm in that certain inmates have

claimed that "any white man who seeks to integrate with other inmates of different races will be

physically harmed."  (Dkt. No. 25 at 22.)  However, plaintiff is not seeking to be housed with a

person of a different race.  Nor is plaintiff facing an order to be housed with a person of a

different race.  Rather, plaintiff has simply been classified as "race eligible."  As noted above,

plaintiff is presently double-celled and has not alleged he is facing an order to be celled with a

person of a different race.  In any event, plaintiff's allegations are too speculative to state a

cognizable Eighth Amendment claim.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 843 (1994) ("It is

not enough merely to find that a reasonable person would have known, or that the defendant

should have known.").  Plaintiff's Eighth Amendment claim should also be dismissed.

IV.  <u>Conclusion</u>

Accordingly, this court recommends that defendants' motion to dismiss be

granted, and this action be dismissed based on plaintiff's failure to state a cognizable civil rights

claim.  Fed. R. Civ. P. 12(b)(6).

IT IS HEREBY RECOMMENDED that:

1.  Defendants' January 5, 2011 motion to dismiss (dkt. no. 21) be granted; and

2.  This action be dismissed for failure to state a civil rights claim.  Fed. R. Civ. P. 12(b)(6).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 13, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

glov0430.mtd

14